Mary E. McAlister, State Bar No. 148570
Child & Parental Rights Campaign
5425 Peachtree Pkwy, Suite 110
Norcross, GA 30092
(770) 448-4525
mmcalister@childparentrights.org

C. Erin Friday, State Bar No. 189742
P.O. Box 442
San Carlos, CA 94070
(415) 577-9271
erin.friday@yahoo.com

Jennifer Kennedy, State Bar No. 185406
61 S. Baldwin Ave. #1626
Sierra Madre, CA 91025-7076
(626) 888-2263
Jenniferkennedyesq@gmail.com

Ernest G. Trakas (MO Bar No. 33813) *
Vernadette R. Broyles (GA Bar No. 593026)*
Kevin R. Smith (KY Bar No. 97083)*
Child & Parental Rights Campaign
5425 Peachtree Pkwy, Suite 110
Norcross, GA 30092
(770) 448-4525
etrakas@childparentrights.org
vbroyles@childparentrights.org
ksmith@childparentrights.org

*(Admission by Pro Hac Vice)
Attorneys for Plaintiff, Melissa Batie-Smoose

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | | |
|---|---|---|
| MELISSA BATIE-SMOOSE | ) | NO. 2:25-CV-08957 |
| | ) | |
| V. | ) | **AMENDED COMPLAINT FOR** |
| | ) | **EMPLOYMENT AND SEX** |
| THE BOARD OF TRUSTEES OF | ) | **DISCRIMINATION AND** |
| THE CALIFORNIA STATE UNIVERSITY | ) | **RETALIATION** |

Amended Complaint for Employment Discrimination and Retaliation

1

1
2    (ON BEHALF OF SAN JOSE STATE          )          **JURY TRIAL DEMANDED**
3    UNIVERSITY),                          )
4    _____DEFENDANT_____      )

5        Plaintiff, Melissa Batie-Smoose, by and through undersigned counsel, brings this action

6    against Defendant, The Board of Trustees of the California State University ("CSU"), to enforce

7    the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et

8    seq. ("Title VII") and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.

9    ("Title IX").

10                          **I. JURISDICTION AND VENUE**

11        1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

12    1331, as this case arises under the laws of the United States, specifically Title VII and Title IX.

13        2.    Jurisdiction is also proper under 42 U.S.C. § 2000e-5(f)(3), which provides for

14    original jurisdiction in federal district courts for actions brought under Title VII.

15        3.    Venue is proper in the United States District Court for the Central District of

16    California pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3), and 20 U.S.C. § 1681(a)

17    because the Defendant, The Board of Trustees of the California State University ("CSU"), resides

18    in and conducts business in this district, including maintaining business records and execution of

19    business, executive and personnel decisions by officials who made or ratified decisions regarding

20    Plaintiff's employment, including adverse actions.

21        4.    Plaintiff, Melissa Batie-Smoose, has satisfied all administrative prerequisites to

22    filing this action under Title VII, including the timely filing of a charge of discrimination with

23    the Equal Employment Opportunity Commission on April 30, 2025, and receipt of a Notice of

24    Right to Sue dated July 17, 2025. Plaintiff's EEOC charges specifically and expressly identified

Amended Complaint for Employment Discrimination and Retaliation
2

and described Defendant's discriminatory and retaliatory actions based on Plaintiff's sex and her opposition to sex discrimination and advocacy for female athletes.

5.    No administrative exhaustion is required for Plaintiff's claims under Title IX. Defendant is a recipient of federal funds within the meaning of Title IX and is subject to its provisions.

## II. PARTIES

6.    Melissa Batie-Smoose ("Plaintiff") is a female individual and at all relevant times was a resident of Scotts Valley, California. At all relevant times, Plaintiff was employed as the Associate Head Coach for the Women's Volleyball team at San Jose State University.

7.    CSU (on behalf of San Jose State University) is a public university and a constituent institution of the California State University system, organized and existing under the laws of the State of California. Defendant maintains its principal place of business at 401 Golden Shore, Long Beach, CA 90802, and is an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b), employing more than fifteen (15) employees. Defendant is a recipient of federal financial assistance within the meaning of Title IX, 20 U.S.C. § 1681(a), and is subject to Title IX and other federal anti-discrimination laws. At all relevant times, Defendant was acting as an employer with respect to Plaintiff's employment.

## III. INTRODUCTION

8.    This is an action for employment discrimination based on sex and retaliation brought by Plaintiff Melissa Batie-Smoose against Defendant the Board of Trustees of the California State University under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.

9.    Plaintiff is a seasoned women's collegiate volleyball coach who, on March 1, 2024, accepted reappointment to the position of Associate Head Coach for the Women's Volleyball team at San Jose State University ("SJSU"). After relocating her family across the country to California, Plaintiff discovered that, unbeknownst to her at the time of her original hiring, on or around January 22, 2023, the then head coach Trent Kersten had recruited, signed and awarded an athletic scholarship to a male athlete, identifying as a woman, to play on the SJSU women's NCAA Division 1 volleyball team.

10.    Upon learning of the presence of a male athlete on the women's team and observing related discriminatory conduct by the head coach and SJSU administration, Plaintiff raised concerns regarding sex discrimination and the integrity and fairness of the SJSU women's volleyball team and women's sports in general.

11.    In October 2024, Plaintiff filed a complaint against SJSU, the Mountain West Conference, and the National Collegiate Athletic Association ("NCAA"), alleging discrimination based on sex and retaliation in violation of Title IX of the Educational Amendments Act of 1972 regarding transgender eligibility policies. Plaintiff's complaints and opposition to these practices constituted protected activity under both Title VII and Title IX.

12.    Section 901(a) of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a), provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance."

13.    The regulations of the United States Department of Education implementing Title IX provide, in relevant part, "no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any academic,

Amended Complaint for Employment Discrimination and Retaliation

4

1    extracurricular, research, occupational training or other education programs or activity operated

2    by a recipient which received Federal financial assistance." 34 C.F.R. §106.31(a).

3          14.    Plaintiff's advocacy for the rights of female athletes and the integrity of women's

4    sports was consistent with the core purpose of Title IX, which is to ensure equal opportunities,

5    access to, safety, and fairness for females in educational programs and activities, including

6    athletics. Defendant's adverse actions against Plaintiff for this advocacy undermine the statutory

7    protections intended by Congress and threaten to chill the willingness of coaches and others to

8    enforce sex equality in collegiate athletics.

9          15.    Additionally, a male coach on the team, whose position is similar to Plaintiff's and

10   subject to the same employment policies, who supported the male transgender athlete was not

11   disciplined or subjected to adverse action for direct violations of Title IX in recruiting a male

12   athlete to play as a female, failing to inform the female players of a male being on the team,

13   sharing locker rooms and overnight accommodations with female players, further evidencing

14   Defendant's discriminatory and retaliatory motive and undermining the statutory purpose of Title

15   IX.

16         16.    Shortly after Plaintiff's protected activity for her opposition to what she reasonably

17   and in good faith believed to be sex discrimination against the female athletes and her filing of a

18   Title IX complaint, Defendant suspended Plaintiff on November 1, 2024, and then on or about

19   January 31, 2025, Defendant refused to renew Plaintiff's employment contract, thereby

20   terminating her employment. Notably, prior to the events leading to Plaintiff's suspension and

21   termination, Head Coach Todd Kress had already expressed a desire to terminate Plaintiff,

22   without cause, evidencing pretext and personal bias.

Amended Complaint for Employment Discrimination and Retaliation

5

17.     Punishing coaches for raising concerns about the fairness and integrity of women's sports not only harms the individual advocate but also undermines the enforcement of Title IX's mandate and has a chilling effect on those who seek to protect sex equality in collegiate athletics, contrary to public policy and the statutory objectives of Title IX.

18.     Defendant's actions in suspending and terminating Plaintiff were not based on her job performance but were in direct retaliation for her opposition to sex discrimination and her advocacy for the fairness and equal access to programs, services, and activities for female athletes.

19.     Defendant's conduct constitutes unlawful employment discrimination based on sex and unlawful retaliation for engaging in protected activity, in violation of both Title VII and Title IX, and further undermines the statutory purpose of Title IX to protect and advance the rights of female athletes.

20.     As a result of Defendant's conduct, Plaintiff seeks all available remedies under Title VII and Title IX, including but not limited to reinstatement, back pay, compensatory damages, attorney's fees and costs, to the extent permitted by law, and injunctive relief as no previous application for injunctive relief sought herein has been made to this Court and if this Court does not grant the injunctive relief sought herein then Plaintiff will be irreparably harmed because no plain, adequate, or complete remedy at law is available to Plaintiff to redress all the wrongs addressed herein.

## IV. FACTUAL ALLEGATIONS

21.     On or about March 1, 2024, Plaintiff Melissa Batie-Smoose accepted an offer of employment from Defendant, the Board of Trustees of the California State University, to serve as the Associate Head Coach for the Women's Volleyball team at San Jose State University ("SJSU").

Amended Complaint for Employment Discrimination and Retaliation

6

22.     The employment contract provided for an annual salary plus bonuses based upon performance metrics of the team, and incentives for Plaintiff to elevate the ranking of the Women's Volleyball team.  (See Exhibit A, at paragraph. 2.)  Exhibit A is a true and correct copy of the employment contract between SJSU and Plaintiff ("Employment Contract").

23.     The Employment Contract required Plaintiff to "provide full support and abide by the CSU and SJSU commitment to gender equity in education, including athletics, and its full compliance with Title IX of the Education Amendment to the Civil Rights Act of 1964."  (See Exhibit A, at paragraph 8.).

24.     Plaintiff understood that equity referred to sex as set forth in Title IX. Under the terms of the Employment Contract, Plaintiff would be the assistant coach under Head Coach Todd Kress, with whom she had coached in 2006, and 2019 through 2022.  The two were both offered coaching positions at SJSU.

25.     In reliance on Defendant's employment offer, Plaintiff relocated her family across the country to San Jose, California, to commence her employment with SJSU, with the understanding and expectation that she would be coaching a women's collegiate volleyball team comprised of female athletes. This expectation was rooted in Plaintiff's longstanding commitment to the statutory purpose of Title IX: ensuring equal access to educational programs, services, and activities, including opportunities and fairness for female athletes in collegiate sports.

26.     Defendant is a recipient of federal financial assistance and operates educational programs, services, and activities at SJSU that are subject to the requirements of Title IX of the Education Amendments of 1972.

27.     At the time Plaintiff accepted the position, she was not informed by Defendant or its agents that the then head coach, Trent Kersten, had actively recruited a male athlete, identifying as

Amended Complaint for Employment Discrimination and Retaliation

7

1   "transgender," to join the women's volleyball team in 2022. This male joined the women's

2   volleyball team. This omission was material to Plaintiff's understanding of the position and to the

3   integrity of the women's volleyball program.

4          28.    After beginning her employment at SJSU, Plaintiff observed that one player on the

5   women's volleyball team exhibited physical and athletic abilities that were markedly superior to

6   the other players on the women's volleyball team.

7          29.    Upon further inquiry, Plaintiff learned that this individual, Blair Fleming, was a

8   male who identified as "transgender" and had been recruited to play on the women's volleyball

9   team.

10         30.    In April of 2024, Reduxx, an online widely circulated publication, revealed that

11  Blaire Fleming, a male, was playing on SJSU's women's volleyball team. Following that expose,

12  Blaire Fleming, along with SJSU Administrator Laura Alexander and Michelle Smith McDonald,

13  and Todd Kress, informed his teammates of his "transgender" status.

14         31.    Plaintiff became concerned that the inclusion of a male athlete on the women's

15  team, as well as other related conduct, actions and decisions by the head coach, Todd Kress, and

16  SJSU administration, constituted sex discrimination under both Title VII and Title IX, and that

17  such inclusion undermined the statutory purpose of Title IX to assure equal access to programs,

18  services and activities and to protect the integrity and fairness of women's sports.

19         32.    During her tenure as Associate Head Coach, Plaintiff observed that Head Coach

20  Todd Kress consistently provided preferential treatment to the male athlete, Blaire Fleming, over

21  female student-athletes on the SJSU women's volleyball team. This preferential and

22  discriminatory conduct, which is beyond minor preferential treatment, by Todd Kress included:

a.  Top female recruit, Elle Patterson, who Head Coach Todd Kress had convinced to transfer from Fairfield University where Plaintiff and Todd Kress had coached her on its women's team, but denied her the opportunity to play both indoor and beach volleyball (which was one of the reasons Kress recruited her to transfer to SJSU), while Fleming was allowed to participate in both sports despite having never played beach volleyball before.

b.  Patterson, who played the same position as Fleming, was told she would not receive a scholarship due to injury for her first year but was promised one for future years; however, this promise was later withdrawn, and Patterson was forced to pay out-of-state tuition and ultimately left the team. In contrast, Fleming retained a full athletic scholarship throughout the same season, even though Fleming missed more games due to injury than did Patterson.

c.  Fleming was routinely permitted to violate team rules without discipline, including skipping practices, failing to wear team uniforms, and leaving the team hotel without permission during away games. Female athletes were held to stricter standards and disciplined for similar conduct, while Fleming was not.

33.    In late September 2024, the Co-Captain of the volleyball team, Brooke Slusser, joined a lawsuit against the NCAA for its policy allowing males to compete in women's sports stemming from the participation of male Blaire Fleming on the SJSU women's volleyball team. Slusser spoke publicly about Fleming's sex on The Megyn Kelly Show on October    13,    2024, and Outkick on September 20, 2024.

Amended Complaint for Employment Discrimination and Retaliation

9

1    34.    In October 2024, Fleming, along with other team members, met with a player from

2    an opposing team the night before SJSU had a scheduled game against the opposing team.

3    Fleming provided a copy of the SJSU scouting report to the opposing team player and discussed

4    "throwing the game" and targeting teammate Brooke Slusser for injury. Slusser had raised

5    concerns about a male athlete competing on the women's team. During the game, Plaintiff

6    personally observed Fleming fail to block as required and wink at the opposing player, consistent

7    with the pre-game plan. Despite Todd Kress' knowledge of these actions, no discipline was

8    imposed on Fleming or the other athletes involved.

9    35.    Throughout the 2023 and 2024 seasons, Plaintiff and other staff were repeatedly

10    instructed by SJSU administrators, Laura Alexander and Michelle Smith McDonald, not to speak

11    about Fleming's sex or "transgender" status to anyone on or off the team. Female athletes on the

12    team were warned that discussing Fleming's participation could be considered "transphobic" and

13    a violation of Title IX or school policy, thereby threatening their scholarships and team status.

14    These repeated warnings to suppress their speech created an environment of fear and intimidation,

15    causing female athletes to remain silent about their concerns.

16    36.    Despite attempts to intimidate and silence the female athletes on the team, co-

17    captain Brooke Slusser and other athletes nonetheless raised concerns about fairness, equal access

18    to activities, and personal safety. In response, Slusser and other female athletes were ostracized,

19    threatened with loss of scholarship, and subjected to derogatory comments by Todd Kress. After

20    Slusser spoke about concerns, Kress ceased interacting and communicating directly with her.

21    Kress instructed Plaintiff to communicate with Slusser on his behalf and spoke derogatorily about

22    Slusser to other players.

Amended Complaint for Employment Discrimination and Retaliation
10

37.     Despite Plaintiff's and others' reports of serious misconduct, harassment, and discrimination—including allegations of game-fixing and targeting a teammate for injury—SJSU administration failed to investigate allegations of said conduct or take any appropriate action, further evidencing the university's indifference to the rights and safety of female athletes.

38.     In October 2024, Plaintiff filed a formal Title IX complaint with SJSU, alleging discrimination based on sex and specifically raising concerns regarding the participation of a male on the SJSU women's volleyball team and the discriminatory treatment of female athletes. Plaintiff's advocacy and complaints about sex discrimination in the administration of the women's volleyball program directly affected her employment and the terms and conditions of her job.

39.     Plaintiff's complaint and opposition to these practices constituted protected activity under both Title VII and Title IX, in that she opposed practices that she reasonably believed to be unlawful sex discrimination in employment and in the operation of federally funded educational programs.

40.     Shortly after Plaintiff engaged in protected activity, on or about November 1, 2024, Defendant suspended Plaintiff from her position as Associate Head Coach, claiming, *inter alia*, that she had violated Fleming's private information, despite the knowledge of his biological sex being previously well-published in the media, and confirmed and revealed by Fleming himself, further demonstrating pretext by the Defendant.

41.     On or about January 31, 2025, Defendant terminated Plaintiff's employment. The stated or implied reason for Plaintiff's termination was not related to her job performance or qualifications, but it was instead the contents of her personnel action file, which included her opposition to sex discrimination in the SJSU's women's volleyball program and her filing of a

Amended Complaint for Employment Discrimination and Retaliation

11

1    formal Title IX complaint to protect the rights of female athletes.  SJSU's assertion that Plaintiff's

2    contract had expired is a pretext for her termination because SJSU's non-renewal of her contract

3    was motivated by her protected activity, was retaliatory, and constitutes an adverse employment

4    action under both Title VII and Title IX. At all relevant times, Alexander made it clear to the

5    players and Plaintiff that they were not to speak about Blaire Fleming's "transgender" status

6    outside of the team, that none of them had any recourse to having a male on the team, and that

7    their scholarships could be lost.

8        42.    At all relevant times, Plaintiff was a highly qualified and experienced women's

9    collegiate volleyball coach, having coached at the collegiate level since 2005.  Additionally,

10    SJSU's own documentation states that Plaintiff's first employee evaluation was "Meets

11    Standards" overall, with only a single "Needs Improvement" in "Professionalism/Individual

12    Development." This is not a negative evaluation and does not, on its face, support non-renewal.

13    Plaintiff's performance was satisfactory, and the later escalation to a "Needs Improvement"

14    overall rating in her 2024-2025 evaluation (completed by Kress) occurred only after Plaintiff's

15    protected activity. Even the criticisms cited in that evaluation were minor, subjective, or arose

16    only after Plaintiff's protected activity.

17        43.    During her tenure at SJSU, Plaintiff was instructed or pressured by SJSU

18    administration and/or the head coach to accept the inclusion of a male on the women's team, to

19    provide preferential treatment to the male athlete, and to conceal the fact that a male was

20    participating on the women's team.

21        44.    On or about April 17, 2024, immediately after the Reduxx article was published

22    exposing Fleming's sex, Plaintiff and Laura Alexander discussed the matter. Plaintiff again

23    voiced her opposition to having a male on the women's team.  Plaintiff was instructed that if she

Amended Complaint for Employment Discrimination and Retaliation

12

1    did not agree to the decision, she needed to leave the team.  During a subsequent call with the

2    coaching staff and the administrators, Michelle McDonald reiterated that they (the coaching staff)

3    needed to support the Defendant's decision to have a "trans-identified" male on the team, and

4    they should leave the team if they disagreed.

5        45.    Plaintiff objected to these instructions and practices and advocated for the dignity,

6    fairness, integrity, and safety of women's sports in furtherance of Title IX's statutory mandate.

7    Likewise, Plaintiff's suspension for "disclosing student information to the media" by sharing her

8    Title IX complaint was in furtherance of her protected activity to report discrimination and only

9    occurred after the same or similar information had already been in the public domain in press

10   articles since April 2024, and at least seven games had been forfeited by other women's teams

11   that refused to compete against a trans-identified male player.

12       46.    On January 20, 2025, President Trump signed Executive Order 14168,

13   Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the

14   Federal Government. *See* 90 Fed. Reg. 8516 (Jan. 30, 2025). *See also*, *Tennessee v. Cardona,* 762

15   F. Supp. 3d 615 (E.D. Ky. 2025)

16       47.    Plaintiff's advocacy for the rights of female athletes and her efforts to protect the

17   integrity of women's sports were consistent with the core purpose of Title IX, which was enacted

18   to ensure equal access to programs, services and activities including athletic opportunities for

19   women and to prevent sex-based discrimination in federally funded educational programs.

20       48.    Defendant's actions in suspending and terminating Plaintiff were motivated by her

21   opposition to sex discrimination and her protected advocacy for the statutory rights of female

22   athletes, and they constitute unlawful discrimination and retaliation in violation of Title VII and

23   Title IX.

Amended Complaint for Employment Discrimination and Retaliation

49.     As a result of Defendant's conduct in violation of both Title VII and Title IX, Plaintiff has suffered and continues to suffer lost wages, loss of professional reputation and opportunities, emotional distress, and other damages.

## V. LEGAL CLAIMS UNDER TITLE VII

### Count I: Sex Discrimination in Violation of Title VII (42 U.S.C. § 2000e-2(a))

50.     Plaintiff realleges and incorporates by reference the factual allegations in all preceding paragraphs as though fully set forth herein.

51.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), makes it unlawful for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment on the basis of such individual's sex.

52.     At all relevant times, Plaintiff was an employee of Defendant within the meaning of Title VII, and Defendant was an employer subject to Title VII.

53.     Plaintiff was qualified for her position as Associate Head Coach for the Women's Volleyball team at San Jose State University and performed her duties satisfactorily.

54.     Defendant, by and through its agents and employees, engaged in unlawful employment practices by subjecting Plaintiff to adverse employment actions, including suspension and termination, on the basis of her sex and/or because she opposed practices that she reasonably believed constituted sex discrimination.

55.     Defendant's conduct altered the terms, conditions, and privileges of Plaintiff's employment and resulted in her wrongful termination.

56.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer lost wages, loss of professional reputation and opportunity, emotional distress, and other damages.

57.     Defendant's actions were willful, intentional, and/or taken with reckless disregard for Plaintiff's federally protected rights.

58.     Other coaches who did not oppose, or supported, the inclusion of a biological male on the women's volleyball team or who did not advocate for the rights of female athletes, were not subjected to suspension, termination or any discriminatory actions as was Plaintiff. Todd Kress, the male head coach, who knew a male was participating on the women's team and sharing locker rooms and overnight accommodations with female athletes, made allowances for and to Blaire Fleming not afforded to female players, and was not disciplined, suspended, or terminated, nor subjected to allegations of violating Title IX.

59.     Plaintiff, who was the only female coach on the women's volleyball team and a source of support, comfort and advocacy for the female athletes, was suspended and terminated because of her sex and because she advocated for female athletes and opposed sex-based discrimination, including: 1) opposing permitting a biological male to play on the women's volleyball team and receive preferential treatment vis-à-vis female players,  and 2) opposing the silencing of female players who disagreed with the presence and preferential treatment of a male player on the team. Defendant's adverse actions were motivated by Plaintiff's sex and her advocacy for female athletes, as evidenced by disparate treatment of male comparators and the timing of the adverse actions following Plaintiff's protected activity.

**Count II: Retaliation in Violation of Title VII (42 U.S.C. § 2000e-3(a))**

60.     Plaintiff realleges and incorporates by reference the factual allegations in all preceding paragraphs as though fully set forth herein.

61.     Title VII, 42 U.S.C. § 2000e-3(a), prohibits employers from discriminating against any employee because the employee has opposed any practice made unlawful by Title VII, or

Amended Complaint for Employment Discrimination and Retaliation
15

1    because the employee has made a charge, testified, assisted, or participated in any manner in an

2    investigation, proceeding, or hearing under Title VII.

3        62.    Plaintiff engaged in protected activity under Title VII by opposing and reporting

4    what she reasonably and in good faith believed to be sex-based discrimination in the

5    administration and operation of the women's volleyball program at SJSU, including filing a Title

6    IX complaint against SJSU.

7        63.    Shortly after engaging in this protected activity and in direct retaliation for

8    engaging in the activity, Plaintiff was subjected to adverse employment actions by Defendant,

9    including suspension and termination.

10        64.    Plaintiff's protected activity, *i.e.,* advocating for the rights of the female players

11    on her team and opposing and reporting sex-based discrimination in Defendant's education

12    programs in and before September 2024, was a direct and proximate cause of adverse employment

13    actions taken by Defendant on November 1, 2024, and January 31, 2025. The temporal proximity

14    between Plaintiff's protected activity and the adverse actions establishes a causal connection

15    between Plaintiff's protected activity and Defendant's discriminatory actions.

16        65.    Defendant's actions constitute unlawful retaliation in violation of Title VII and

17    would dissuade a reasonable employee from making complaints of discrimination.

18        66.    As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has

19    suffered and continues to suffer lost wages, loss of professional reputation and opportunities,

20    emotional distress, and other damages.

21        67.    Defendant's retaliatory actions were willful, intentional, and/or taken with reckless

22    disregard for Plaintiff's federally protected rights.

23                   **VI. LEGAL CLAIMS UNDER TITLE IX**

1      **Count III: Sex Discrimination in Violation of Title IX (20 U.S.C. § 1681 et seq.)**

2      68.    Plaintiff realleges and incorporates by reference the factual allegations in all

3 preceding paragraphs as though fully set forth herein.

4      69.    Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., prohibits

5 discrimination on the basis of sex in any education program or activity receiving federal financial

6 assistance.

7      70.    At all relevant times, Defendant was a recipient of federal funds within the

8 meaning of Title IX and operated educational programs, services and activities covered by Title

9 IX.

10      71.    Plaintiff was employed by Defendant in an education program or activity receiving

11 federal financial assistance. Plaintiff's opposition to the inclusion of a biological male on the

12 women's team and her advocacy for the statutory rights of female athletes were in furtherance of

13 Title IX's core purpose to ensure equal opportunities and fairness for women in educational

14 programs, services and activities, including athletics.

15      72.    Defendant, by and through its agents and employees, engaged in unlawful

16 practices by subjecting Plaintiff to adverse employment actions, including suspension and

17 termination, on the basis of her sex and/or because she opposed practices that she reasonably and

18 in good faith believed constituted sex-based discrimination. Plaintiff's advocacy for the statutory

19 rights of female athletes and the integrity of women's sports was in furtherance of Title IX's core

20 purpose to ensure equal opportunities and fairness for women in educational athletics.

21      73.    The male head coach who supported the participation of the male "transgender"

22 athlete on the women's volleyball team and advocated on behalf of and demonstrated preferential

23 treatment of the male "transgender" athlete vis-à-vis female teammates was not disciplined or

Amended Complaint for Employment Discrimination and Retaliation

17

1    terminated, while Plaintiff, the sole female member of the coaching staff, was suspended and

2    terminated for opposing the same conduct. This disparate treatment is strong evidence of

3    Defendant's discriminatory intent and demonstrates selective enforcement of Defendant's

4    policies against those who advocate for the statutory rights of female athletes.

5        74.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has

6    suffered and continues to suffer lost wages, loss of professional reputation and opportunities,

7    emotional distress, and other damages.

8        75.    Defendant's actions were willful, intentional, and/or taken with reckless disregard

9    for Plaintiff's federally protected rights.

10        **Count IV: Retaliation in Violation of Title IX (20 U.S.C. § 1681 et seq.)**

11        76.    Plaintiff realleges and incorporates by reference the factual allegations of all

12    preceding paragraphs as though fully set forth herein.

13        77.    Title IX prohibits retaliation against any individual for opposing sex

14    discrimination or for participating in any manner in an investigation, proceeding, or hearing under

15    Title IX. The Ninth Circuit has repeatedly recognized that retaliation for advocacy in furtherance

16    of Title IX's statutory purpose is actionable under Title IX. See, e.g., *Campbell v. Hawaii Dep't*

17    *of Educ.*, 892 F.3d 1005, 1012–14 (9th Cir. 2018); *Doe v. Regents of the Univ. of Cal.*, 23 F.4th

18    930, 936–37 (9th Cir. 2022); *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 724–25 (9th Cir. 2012);

19    *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1088–89 (9th Cir. 2006).

20        78.    Plaintiff engaged in protected activity under Title IX by opposing and reporting

21    what she reasonably and in good faith believed to be sex-based discrimination in Defendant's

22    education programs or activities, including filing a formal Title IX complaint with SJSU.

23    Plaintiff's advocacy for the statutory rights of female athletes and the integrity of women's sports

Amended Complaint for Employment Discrimination and Retaliation

1    was consistent with the core purpose of Title IX to ensure equal opportunities and fairness for

2    women in educational athletics.

3        79.    Shortly after engaging in this protected activity, Plaintiff was subjected to adverse

4    employment actions by Defendant, including suspension and termination.

5        80.    Defendant's actions in punishing Plaintiff for her advocacy for the rights of female

6    athletes and the integrity of women's sports undermines the statutory protections intended by

7    Congress in Title IX and has a chilling effect on other coaches, staff and players who might

8    otherwise seek to enforce or advocate for sex equality in collegiate athletics in response to conduct

9    that is contrary to public policy and the statutory objectives of Title IX.

10       81.    Plaintiff's protected activity, *i.e.,* advocacy for the rights of the female players on

11   her team and opposing and reporting sex-based discrimination in Defendant's education programs

12   in and before September 2024, was a direct and proximate cause of adverse employment actions

13   taken by Defendant on November 1, 2024, and January 31, 2025. The temporal proximity between

14   Plaintiff's protected activity and Defendant's adverse actions establishes a causal connection.

15       82.    As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has

16   suffered and continues to suffer lost wages, loss of professional reputation and opportunities,

17   emotional distress, and other damages.

18       83.    Defendant's retaliatory actions were willful, intentional, and/or taken with reckless

19   disregard for Plaintiff's federally protected rights.

20                              **VII PRAYER FOR RELIEF**

21       WHEREFORE, Plaintiff Melissa Batie-Smoose respectfully requests that the Court enter

22   judgment in her favor and against Defendant the Board of Trustees of the California State

23   University, and award the following relief:

Amended Complaint for Employment Discrimination and Retaliation

19

1    **Reinstatement** to Plaintiff's former position as Associate Head Coach for the Women's

2    Volleyball team at San Jose State University, or to a comparable position, with all attendant rights,

3    benefits, and seniority or, in the alternative, an award of front pay in lieu of reinstatement;

4    **Back pay** for lost wages, salary, employment benefits, and other compensation denied or

5    lost to Plaintiff as a result of Defendant's unlawful conduct, in an amount to be determined at

6    trial.

7    **Compensatory damages** for emotional distress, pain and suffering, loss of professional

8    reputation and opportunities, and other non-economic losses caused by Defendant's

9    discrimination and retaliation, in an amount to be determined at trial, subject to the statutory caps

10   and limitations of Title VII and Title IX;

11   **Injunctive relief** prohibiting Defendant from engaging in further unlawful employment

12   practices in violation of Title VII and Title IX, and requiring Defendant to implement appropriate

13   policies, training, and monitoring to prevent future discrimination and retaliation and to protect

14   advocacy for the statutory rights of female athletes and to ensure that employees are not retaliated

15   against for raising concerns about sex-based discrimination or for advocating

16    for the integrity and fairness of women's sports;

17   **Pre-judgment and post-judgment interest** as allowed by law;

18   **Attorney's fees and costs** incurred in connection with this action, pursuant to 42 U.S.C.

19   § 2000e-5(k), 42 U.S.C. § 1988(b), and other applicable law, including Title VII and Title IX;

20   **Such other and further relief** as the Court deems just and proper.

21   ## VII. JURY DEMAND

22   Plaintiff hereby demands a trial by jury on all claims and issues so triable pursuant to Rule

23   38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42

Amended Complaint for Employment Discrimination and Retaliation
20

1    U.S.C. § 1981 (a), including all claims brought under Title VII of the Civil Rights Act of 1964

2    and Title IX of the Education Amendments of 1972.

3        Dated November 21, 2025

4                                              s/ *Mary E. McAlister*
5                                              Mary E. McAlister, SBN 148570
6                                              Ernest G. Trakas (MO Bar No. 33813) *
7                                              Vernadette R. Broyles (GA Bar No. 593026)*
8                                              Kevin R. Smith (KY Bar No. 97083)*
9                                              Child & Parental Rights Campaign
10                                             5425 Peachtree Pkwy, Suite 110
11                                             Norcross, GA 30092
12                                             (770) 448-4575
13                                             etrakas@childparentrights.org
14                                             Vbroyles@childparentrights.org
15                                             Ksmith@childparentrights.org
16                                             (*Admitted phv)
16
17
18                                             Jennifer Kennedy, State Bar No. 185406
19                                             61 S. Baldwin Av. #1626
20                                             Sierra Madre, CA 91025-7076
21                                             (626) 888-2263
22                                             jenniferkenndeyesq@gmail.com
23
24                                             C. Erin Friday, SBN 189742
25                                             P.O. Box 442
26                                             San Carlos, CA 94070
27                                             (415) 577-9271
28                                             erin.friday@yahoo.com
29
30
31
32
33
34
35
36
37
38

Amended Complaint for Employment Discrimination and Retaliation
21

1
2

## CERTIFICATE OF SERVICE

3    I hereby certify on this 21st day of November 2025, that a copy of the foregoing Amended

4    Complaint for Employment and Sex Discrimination and Retaliation was served on Counsel for

5    the Defendants via ECF.

6
7
8                                    */s/Mary E. McAlister*
9                                    Mary E. McAlister
10